497 A.2d 1182

**Robert D. HAUGHT, Sr.**

**v.**

**Suzanne M. GRIEASHAMER.**

**No. 62, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Oct. 4, 1985.

Steven P. Lemmey, Hyattsville (Melvin G. Bergman, Lanham, on brief), for appellant.

Anthony A. Keder, Hyattsville, for appellee.

Argued before GILBERT, C.J., and WILNER and AL-PERT, JJ.

WILNER, Judge.

In March, 1974, appellee Suzanne Haught (now Suzanne Grieashamer) filed a complaint in the Circuit Court for Prince George's County seeking a divorce from her husband, Robert (appellant).  The divorce was granted in September, 1975, but unfortunately that proved to be more the commencement than the conclusion of the litigation between these parties.  Since the entry of the divorce decree, more than 10 pages of docket entries have been added to the court file, reflecting a variety of petitions to modify and enforce the decree, hearings thereon, Master's Reports, exceptions, and court orders.

This appeal arises, ultimately, from a proceeding before Domestic Relations Master David K. Rumsey on May 28, 1980.  The Master had before him four petitions—three from appellant (two dealing with visitation and one to decrease child support below the decretal amount of $30 per week per child) and one from appellee, to increase the decretal child support.  For reasons unexplained in the record before us, Master Rumsey sat on the case for nearly a year.  On May 25, 1981, he filed a Report recommending that one of appellant's petitions dealing with visitation be granted, that his other two petitions be denied, and that appellee's petition to increase child support be granted. The Master recommended an increase to $45 per week per child—a total of $90 per week—commencing as of November 30, 1980 (which appears to be approximately the median point between the date of the hearing and the date of the decision).  Recognizing that the six-month retroactivity would create an instant and automatic arrearage of $780, the Master further recommended that the arrearage "be

reduced by paying $45.00 per week upon the emancipation of the eldest of the two children.[1]

At the end of the Report, Master Rumsey stated that a copy of it had been sent to appellant who, during that proceeding, was unrepresented by counsel. There is no indication in the court file that the Report was not, in fact, mailed to appellant or that it was ever returned by the Post Office as undelivered. On June 25, 1981, counsel for appellee filed an affidavit that, on June 4, he had mailed to appellant by certified mail an original and one copy of a proposed order "prepared in accordance with the Master's recommendation" and that the material was returned to him on June 23, "unclaimed." The address to which the orders were sent was Box 149 Boone's Mobile Estates, Lothian, Maryland 20820, which appellant acknowledges was his address at that time.[2]

No exceptions were filed by appellant to Master Rumsey's Report, and so, on June 25, 1981, the court entered an order in accordance with the Master's recommendations. Specifically, the order modified the 1975 divorce decree to increase child support to $45 per week per child, effective November 30, 1980, and directed the instant $780 arrearage to be amortized "upon the emancipation of the eldest of the two children."

Nothing more occurred until February 22, 1982, when the Court's Support Collections Unit filed a petition to hold appellant in contempt of the 1975 decree, alleging an arrear-

---

**1.** The precise ages of the children are not clear from the record. In 1979, both parents asserted that the older child was then 11; in his May, 1981 Report, Master Rumsey found the older child still to be 11. Assuming that the parents have some superior knowledge of the matter, we shall assume that, in May, 1981, the elder child must have been closer to 13, and that, as a result, under normal circumstances and absent an earlier emancipation (of which there is no indication in the record), the arrearage would have been held in abeyance for between five and seven years, it being unclear whether the obligation for support would end at age 18 or age 21.

**2.** On September 22, 1981, appellant formally informed the court of a new address, P.O. Box 181, Fairview, W. Va. 26570.

age of $779.08. On March 23, 1982, Melvin G. Bergman, Esq. entered his appearance for appellant; on that same day, a Master's Report dated March 19, but reflecting Bergman's appearance, was filed noting that appellant was to "pay total arrearage" on or before May 13, 1982. Whether that payment was made is not clear. In March, 1983, another contempt petition was filed against appellant, alleging an arrearage of nearly $2,100. Four times the petition was set for hearing before a Master; four times the hearing was postponed at appellant's request.[3]

The reason for these postponements, or at least some of them, seemed to be that (1) inexplicably, the Support Collections Unit was unaware of the June, 1981 court Order increasing the child support and had been calculating the arrearage based on the original $30/week established in the 1975 decree, and (2) appellant claimed that he also had been unaware of that Order. On June 30, 1983, it was apparently decided that the Support Collections Unit would recalculate the arrearage based on the 1981 Order and would file a new contempt petition and that appellant would seek to modify that 1981 Order.

Eventually, both of these things were done. Appellant asked, in effect, that the 1981 Order be rescinded. In a petition to "modify" that Order, he averred that "he never received either the recommendations or a copy of said Order of Court," that he was first apprised of that Order in May, 1983, that if he had been aware of the Master's recommendations he would have filed exceptions to them, and that he was financially unable to pay either the increased amount or the accumulated arrearage. As relief, he asked that the 1981 Order "be modified by not increasing the child support obligation, and that this modification be made retroactive to November 30, 1980" or, in the alternative, that he be excused from paying the arrearage. The Support Collections Unit, apparently in no rush to have the matter re-

---

3.  Hearings were scheduled for April 14, May 20, June 16, and June 30.

solved, waited until October 27, 1983, to file a new contempt petition. It alleged an arrearage, as of then, of $4,860.

In June, 1984—a year after it was filed—appellant's petition to modify was heard by Master Ewing C. Whitaker. In a Report dated July 11, 1984, Master Whitaker recounted the relevant events since the hearing before Master Rumsey in May, 1980, and noted appellant's contention that he had never received either Master Rumsey's Report or the ensuing court Order. He concluded:

> "The Master understands the law to be that there is a presumption of mailing, because of Master Rumsey's certification. The Master also understands the law to be that a party representing himself or counsel representing a party is under a duty to keep themselves informed at all times as to the various docket entries. This Master has known it to be the practice since 1952, it may seem to be a harsh rule, but nevertheless one of the rules."

Implicit in this conclusion is a finding by the Master that appellant did indeed receive a copy of Master Rumsey's Report and that his unawareness of the ensuing Order was the product of his failure to monitor the docket. In any event, he recommended that appellant's petition be denied and that appellant be ordered to pay $250 attorney's fees to the appellee. Appellant filed timely exceptions to those recommendations, asserting that (1) the presumption of mailing was rebutted by his testimony that he never received the Report, (2) it would be "unconscionable" to require him to monitor the docket for a year, and (3) the award of attorney's fees would amount to an abuse of discretion. Following a hearing, the court, on November 8, 1984, overruled the exceptions, and this appeal ensued.[4]

---

4. As if this case wasn't scrambled enough, appellant first noted an appeal on October 16 "from the judgment of this Court entered on September 20, 1984." September 20 was the day of the hearing on the exceptions, but as no formal order had been filed, the appeal was subsequently dismissed. The actual order overruling the exceptions was filed November 8, 1984.

Appellant makes essentially the same complaints here as he did in the Circuit Court. In arguing that the court was "clearly erroneous" in dismissing his petition to modify the June, 1981 Order and in awarding counsel fees to boot, he focuses on the extraordinary delay in Master Rumsey's decision and on his assertion that he never received a copy of either that decision or the ensuing court Order.

■ In examining these complaints, we have first to consider some procedural strictures. Child support is one of those matters over which the court has a continuing jurisdiction. No order establishing an amount of such support, however final for other purposes, is beyond modification at any time, provided that the person seeking modification can demonstrate a sufficient change of circumstances since the order was entered to justify the modification. It is necessarily implicit from the very notion of continuing jurisdiction that a request for modification based on a change of circumstances is not, and cannot be, subject to the limitations of what was, at the time, Md.Rule 625a, now Rule 2–535.

■ That exception is a limited one, however. An order establishing child support, or determining any other matter over which a continuing jurisdiction exists, if possessing all other required attributes of finality, is a judgment (*see* Md.Rule 1–202(m)), and therefore is generally subject to Rule 2–535. Accordingly, if a request for modification filed more than 30 days after entry of the order is based on any ground other than a change in circumstances since the order was entered, the court is without authority to grant the request unless the movant establishes (1) that the court was without jurisdiction to enter the order in the first instance, lack of jurisdiction being cognizable at any time, (2) that the modification seeks no more than the correction of a clerical mistake under Rule 2–535(d), or (3) that the order was the product of fraud, mistake, or irregularity, that the movant made the request in good faith and with

ordinary diligence, and that he has a meritorious defense to the order.[5]

The petition at issue here was not based on any alleged change of circumstances and thus did not seek to invoke the continuing jurisdiction of the court. It was, instead, based entirely on an alleged deficiency in the entry of the order itself—*i.e.*, the procedure from which the order arose. The petition was therefore subject to the limitations of what was then Rule 625a, now Rule 2–535.

Appellant makes no specific allegation of fraud, mistake, or irregularity; nor has he presented sufficient evidence thereof. We certainly can sympathize with appellant's chagrin over Master Rumsey's sitting on the matter for almost an entire year, but it is implicit from Master Whitaker's Report that he did not credit appellant's assertion that appellant never received a copy of Master Rumsey's Report. If indeed appellant received a copy of that Report, as is inferrable from Master Rumsey's certification, the mere delay in reaching the decision, however unconscionable, would not excuse appellant's failure to file timely exceptions. The return of the subsequent communication from appellee's counsel as "unclaimed" permits both favorable and unfavorable inferences, the unfavorable inference being the stronger if coupled with a finding that appellant in fact received Master Rumsey's Report.

Even if we were to assume, or require the Circuit Court to have assumed, that appellant did not receive notice of either Master Rumsey's Report or the court Order, the record shows the entry of counsel for appellant at least by March 23, 1982. A quick perusal of the docket at that time would have reflected the existence of the June, 1981 Order,

---

**5.** Rule 2–535(b) speaks only of the requirement to establish fraud, mistake, or irregularity, as did its predecessor, former Rule 625a. The additional requirement that the movant show good faith, ordinary diligence, and a meritorious cause of action or defense is judicially imposed through caselaw. *See, for example, Owl Club v. Gotham Hotels,* 270 Md. 94, 100, 310 A.2d 534 (1973).

and yet no action was taken to rescind it until the end of June, 1983—some 15 months later. That certainly does not represent the exercise of ordinary diligence.[6]

■ Finally, although appellant averred in his petition to modify the June, 1981 Order that he was financially unable to pay the amounts mandated by that Order, the record does not reveal any substance to that allegation. Insofar as we can tell from this record, he proffered no evidence of his past or present financial condition in connection with the petition to revise; indeed, the only evidence in that regard that we can find in the record is a statement from appellant's employer dated May 22, 1980—eight days before the hearing before Master Rumsey—attesting that appellant had earned $15,752 during the period January 8—May 13, 1980. That equates, on an annual basis, to over $47,000. Ninety dollars a week in child support for two children is hardly an unconscionable burden based on those earnings.

In summary, appellant has established neither fraud, mistake, irregularity, ordinary diligence, or meritorious defense. His petition for modification of the June, 1981 Order was therefore properly denied.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

6. Both parties have had a succession of counsel throughout this, and their other, litigation. Counsel who appeared for appellant at oral argument did not represent him in the trial court, and no criticism of them is intended.