568 A.2d 1157

Mark **LIEBERMAN**

v.

Kathleen **LIEBERMAN.**

No. 675, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Feb. 6, 1990.

**576**

578

Bruce A. Kaufman (Rosenthal and Kaufman, P.A., on the brief), Baltimore, for appellant.

Margaret G. Richlin, Columbia, for appellee.

Argued before WILNER, ROSALYN B. BELL and WENNER, JJ.

ROSALYN B. BELL, Judge.

The primary issue before us is whether a court may modify the support specified in a tax-structured family support agreement, incorporated but not merged into a

divorce decree, where the full amount of the support then being paid relates exclusively to children. Appellant contends the contract precludes modification. We disagree and hold the court may modify child support in such an agreement. We will explain, answer a number of other issues raised and examine the award of attorney's fees.

Mark and Kathleen Lieberman were married in June of 1979. Their son, Andrew, was born less than three weeks later. The parties separated in September of 1981. About two months later, a second son, Michael, was born. The parties, both represented by counsel, entered into a Separation and Property Settlement Agreement in May of 1982. The parties were divorced in June of 1983. The relevant portions of the agreement and the divorce decree will be detailed later.

Of substantial significance in this case is the current wealth and lack of wealth, respectively of the Liebermans. Mr. Lieberman is the president of Londontown Corporation, maker of London Fog raincoats, outerwear and other clothing. He has a yearly income of approximately $387,000 per year and his net worth exceeds one million dollars. Ms. Lieberman, on the other hand, has a negative net worth and an annual income in the neighborhood of $16,000.

In January of 1988, Ms. Lieberman filed a Petition for Contempt, Breach of Contract, Modification of Support, Request for Appointment of Counsel for Minor Children, and other Relief in the Circuit Court for Howard County. She based her claims for relief upon the Separation and Property Settlement Agreement.

An evidentiary hearing was held on the Petition and on January 30, 1989, the court issued a Memorandum and Order granting modification of support, but leaving the issues of contempt and breach of contract open. On February 10, 1989, Mr. Lieberman filed a Motion to Revise, Alter

or Amend, or for New Trial.[1] Ms. Lieberman filed an Answer to this Motion on February 14, 1989. Prior to the hearing on these motions, Mr. Lieberman filed an appeal to this Court and Ms. Lieberman filed a timely cross-appeal.

Mr. Lieberman, appellant/cross-appellee, presents the following questions:

—Is the judgment of the trial court appealable?

—Did the court err in modifying a tax-structured family support agreement which was incorporated, but not merged, into the June 1, 1983 Decree of Divorce when it had no jurisdiction to do so on the ground of res judicata, and the parties had themselves contracted to preclude such modification?

—Did the court err by construing the phrase "share all medical expenses not covered by insurance" to mean divide equally?

—Did the court err in making certain evidentiary rulings?

—Even if the court were empowered to modify the Agreement, was the increased amount awarded excessive?

—Did the court err in granting Ms. Lieberman $5,000 in counsel fees when there was no "substantial justification" for the institution of the proceedings?

Ms. Lieberman, appellee/cross-appellant, raises two additional questions:

—Was the amount of child support awarded by the court sufficient, in light of the demonstrated needs of the children and their father's admitted financial ability to meet those needs?

—Was her award of counsel fees inadequate in light of the parties' incomes and the circumstances of this case?

---

**1.** The parties do not contend this motion was timely filed under Rule 2–534 as it was not filed within 10 days. Hence, the filing of the appeal prior to a hearing and disposition of the motion was not premature. Rule 8–202(c). Despite the title, this amounted to a motion to reconsider under Rule 2–535.

## APPEALABLE ORDER

In a rare moment of accord, the parties agree that the judgment of the trial court is a fully appealable final order. The parties, however, cannot confer jurisdiction, so their agreement that the judgment of the trial court is appealable does not resolve the inquiry. We will be able to accommodate them, but only in part.

In the separation agreement, Mr. Lieberman was "to maintain medical insurance coverage through his employer or an equivalent plan for the benefit of the ... children until the occurrence of a terminal event," as set forth in the agreement between the parties.[2] Thereafter, Mr. and Ms. Lieberman would "share all medical expenses for said children not covered by insurance."

The children needed and were provided with psychological services over a substantial period of time with payments being made directly to the health care provider. Unbeknownst to Ms. Lieberman, while the services were being rendered, Mr. Lieberman's carrier declined to cover further services, deeming them unnecessary. The carrier stated that a protest could be filed. Mr. Lieberman filed no protest and no further payments were made by the carrier.

Ms. Lieberman sought to resolve this problem but was unsuccessful. She then brought this petition which included a request for an adjudication of contempt and breach of contract. She contended that, over and above the agreement, the psychological services were necessitated by Mr. Lieberman's abandonment of the children.

The court in its memorandum and order expressly postponed a decision on the question of contempt:

"The Defendant alleges that the Plaintiff is in contempt of this Court's Decree by virtue of his failure 'to share in the payment of certain psychological services rendered to the children.' Paragraph Nine of the agreement, which was incorporated by reference into the Decree provides

---

**2.** The designated terminal events are not at issue.

that 'Husband and Wife will share all medical expenses for said children not covered by insurance.' The parties acknowledge that the Decree requires some clarification as to the respective obligations of the parties with reference to the payment of medical expenses not covered by insurance and *for that reason the Court will reserve ruling on the alleged contempt so as to afford the parties an opportunity to act* upon This [sic] Court's construction of Paragraph Nine. This Court construes the word 'share' as used in Nine to mean that the Husband and Wife are to divide equally the cost of medical expenses of the children not covered by insurance." (Emphasis added.)

No reference was made to the failure to deal with the breach of contract claim.

Ordinarily, this reservation would preclude any appeal in the absence of a certification under Rule 2–602(b) since such action would result in "piecemeal" appeals. Preclusion is not the result here, however, as certain interlocutory orders are appealable. Maryland Cts. & Jud.Proc.Code Ann. § 12–303 (1974, 1984 Repl.Vol., 1989 Cum.Supp.), provides:

"A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

 * * * * * *

"(3) An order:

 * * * * * *

"(v) For the sale, conveyance, or delivery of real or personal property or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court."

That order, which did not address the contempt issue, increased payments to Ms. Lieberman from the date of the order to $1,500 per month per child and granted an additional $5,000 to her for counsel fees. Certainly, these two parts of the order are appealable since payments of money are involved. We cannot, however, review that

portion of the order dealing with the medical expenses and contempt request. No order on this subject was entered by the court nor was one ever directed to be entered. Had the court entered an order in accordance with its opinion as to the division of the medical expenses, we would have been in quite a different position. *See Frey v. Frey,* 298 Md. 552, 555–57, 471 A.2d 705 (1984).

Counsel for Ms. Lieberman urges us to enter an order under Rule 8–602(e)(3) that there is no just reason for delay and direct the entry of final judgment under Rule 2–602(b). The obvious response is that the parties would fare no better, since the order entered would relate to the already appealable interlocutory order. Since no final judgment on the construction of the medical provision or breach of contract has been entered, those claims remain unresolved. While both counsel urge us to conclude that implicit in the court's decision was the intention to enter a judgment for one-half the medical expenses, we cannot, in the exercise of appropriate appellate discipline, make such a leap. We will consider those portions of the order which are properly before us as interlocutory orders to pay money but will not reach the questions dealing with the interpretation of the word "share" of medical expenses, the matter of contempt or breach of contract.

## TAX–STRUCTURED FAMILY SUPPORT AGREEMENT

### *Lester* Payments

Mr. and Ms. Lieberman entered into an agreement that was patterned on what has come to be known as *Lester* payments[3] after the case entitled *Commissioner of Internal Revenue v. Lester,* 366 U.S. 299, 81 S.Ct. 1343, 6

---

**3.** *Lester* payments were for future agreements abrogated by the Tax Reform Act of 1986, Pub.L. No. 99–154, 100 Stat. 2853 (1986), which specified that in agreements entered into after December 31, 1984 the law will treat certain items as "fixed as payable for the support of children of the payor spouse" where an amount specified in the decree or agreement will be reduced for certain contingencies involving the child. I.R.C. § 71(c)(2) (1986).

L.Ed.2d 306 (1961). The question in *Lester* involved the validity of the payor spouse's deduction from his gross income of the whole of his periodic payments to his divorced wife pursuant to a written agreement entered into by them and approved by the court as a part of the divorce decree. The agreement provided for a flat sum as family support but that "[i]n the event that any of the [three] children of the parties hereto shall marry, become emancipated, or die, then the payments herein specified shall ... be reduced in a sum equal to one-sixth of the payments which would thereafter otherwise accrue." The Supreme Court held that the written agreement must specifically designate the amount of child support and not leave it to conjecture. *Lester*, 366 U.S. at 306, 81 S.Ct. at 1347. Hence, unless specifically designated as child support, the full amount of alimony and support payments was includable in the income of the recipient under then I.R.C. § 22(k) (1939), and deductible by the payor. Mr. Lieberman bargained for the advantage of this holding in the parties' 1982 agreement.

—The Contract—

As a part of the separation agreement, the parties agreed to settle all their financial and property issues. Mr. Lieberman was to pay Ms. Lieberman "fixed and unchangeable (non-modified) the sum of $2,600 per month for three years; $2,400 for three years and $1,800 a month until termination." The payment would be reduced to $1,800 a month upon Ms. Lieberman's remarriage; the sum would be reduced by $900 a month upon the death of either child, court ordered change of custody of either child, or marriage of either child; the sum would be reduced by $1,800 per month upon the first to occur of (1) the death of both children, (2) court ordered change of custody of both children, (3) marriage of both children, (4) the youngest child reaching 18, or (5) both children becoming self-supporting or emancipated. All payments would cease upon the death of Mr. or Ms. Lieberman. The agreement also specified that the payments would cease and support would be submitted to the appropriate tribunal under certain specified circumstances

but "the court shall have no power to grant alimony beyond May 1, 1988 on which date [alimony] is forever terminated." The agreement also provided that the custody, support and attorney's fees provision should be incorporated into the divorce decree but regardless of that incorporation the agreement "shall not be merged in said Decree."

■ The court's order granting the divorce did incorporate the provisions for custody and counsel fees. It also incorporated the provisions for support and maintenance subject to the terms of the agreement. To the extent that the court approved and confirmed the contractual award, it was incorporated. The decree did not specify whether the agreement was merged into the decree, but by its own terms, it could not have merged. If the decree had specified that the agreement was merged, it would have merged the entire agreement, including the nonmerger provision. Hence, the very act of merging would have been a nullity under the contract. *Mendelson v. Mendelson*, 75 Md.App. 486, 498–99, 541 A.2d 1331 (1988).

Mr. Lieberman contends that, since the support and maintenance for Ms. Lieberman and the support, maintenance and education of the children, was agreed to be nonmodifiable and has been incorporated into an enrolled decree, the court has no jurisdiction to modify save under a few contingencies, which have not occurred.

■ In *Mendelson*, 75 Md.App. at 502, 541 A.2d 1331, Judge Bloom, speaking for this Court, said:

"In summary, an agreement for spousal support that is not merged into the divorce decree remains entirely contractual and passes beyond the court's power to modify it for any reason—other than one provided for in the contract—once the decree is enrolled. And the agreement between the parties to this case cannot be modified or terminated because the contingencies that would authorize modification or termination have not occurred."

In the instant case, to the extent that spousal support is involved, the contract is not subject to modification by the

court except within the narrowly defined limits of the contract.[4] Is the same true of child support terms? We hold it is not. We explain.

## —Termination of Payments—

Under the agreement, payments would be terminated and the question of alimony and child support submitted to an appropriate tribunal under three specified situations:

"(1) Determination by the Internal Revenue Service or any other administrative body that the above payments are not deductible by the Husband and reportable as income to the Wife on their Federal and State income tax returns; or

"(2) A court-ordered determination of a child support award or any other court-ordered modification of the sums herein; or

"(3) Decrease in Husband's combined earned and unearned income (as defined by the Internal Revenue Code of 1954) below the sum of $100,000.00 per year."

Mr. Lieberman argues that none of these events occurred and says specifically that the purpose of (2) was to cover the possibility that the court would not approve the child support in granting the decree. He urges that, once the court ratified and enrolled the judgment, the contract became fixed and nonmodifiable, and there could be no court ordered determination. Moreover, he contends that, since the tax structure was an essential term of the contract, the court has no power to modify the contract.

If we follow this argument to its natural conclusion, termination event (2) could never occur once the agreement was enrolled. If that were so, the statement preliminary to the three possible reasons for court jurisdiction which stated:

---

4. We express no opinion on whether an identifiable child support portion of a family support agreement can be modified when payments continue to be paid to the wife.

"It is further provided that the Court shall have no power to grant alimony beyond May 1, 1988 and on said date it is forever terminated[,]"

would be of no significance. The agreement was entered into in 1982 and divorce proceedings were already pending.

Arguably, this termination contingency occurred concurrently with the court's determination and was, in effect, self-executing. Furthermore, the provision could just as easily be a recognition by the draftsperson that the court could always modify child support. We need not wholly rely on this interpretation, however, as there is a more basic overriding reason to affirm the action of the trial judge.

—Modification of Child Support—

Mr. Lieberman takes the position that for a number of reasons the family support provided for in this agreement is nonmodifiable. We will discuss those points in detail later, but first we will consider modification of child support in general.

■ Allocated child support is clearly modifiable. A long line of cases, one of the more recent being *Haught v. Grieashamer*, 64 Md.App. 605, 497 A.2d 1182 (1985), clearly stated this principle. Judge Wilner, speaking for this Court, said:

"In examining these complaints, we have first to consider some procedural strictures. Child support is one of those matters over which the court has a continuing jurisdiction. No order establishing an amount of such support, however final for other purposes, is beyond modification at any time, provided that the person seeking modification can demonstrate a sufficient change of circumstances since the order was entered to justify the modification."

*Haught*, 64 Md.App. at 611, 497 A.2d 1182. More recently, the Legislature enacted a statute designed to spell out the specifics of modifying a child support award:

"(a) Prerequisites.—The court may modify a child support award subsequent to the filing of a motion for

modification and upon a showing of a material change of circumstances.

"(b) Retroactivity of modification.—The court may not retroactively modify a child support award prior to the date of the filing of the motion for modification."

Md.Fam.Law Code Ann. § 12–104 (1984, 1989 Cum.Supp.).

■ An agreement establishing family support which is clearly identifiable as child support cannot change that basic feature of child support. A parent cannot agree to preclude a child's right to support by the other parent, or the right to have that support modified in appropriate circumstances. Moreover, there are public policy considerations. The State has a vested interest in requiring a responsible parent to support his or her child. Otherwise, the State could be responsible in whole or in part for the support of a minor child, even though a parent is financially able to meet those obligations. We hold that a parent may not, even potentially, shift the burden of support to the State.

### —Is This Child Support?—

Just because Mr. Lieberman calls this monthly $1,800 "spousal support" and the Internal Revenue Service included the full amount as "alimony" under this pre–1986 agreement, does not make it "spousal support." In fact, the $1,800 is child support. We explain.

■ The agreement provided that no alimony could be awarded after the May 1, 1988 payment. The payments would be reduced to $1,800 on Ms. Lieberman's remarriage and after the May 1, 1988 payment. The $1,800 would be reduced by $900 in the event of either child's death or court-ordered change of custody or the marriage of either child. Under the current Internal Revenue Code, the $1,800 payments of this agreement, with the contingency for reductions, would have been labeled child support. I.R.C. § 71(c)(2) (1989). The mere fact that under former tax law

the amount may have been fully taxable to the wife does not require us to call it something it is not.

In the present case, there is no question but that the only amount being paid after May 1, 1988 was the $1,800 and no alimony was included in that sum. The full amount of $1,800 was child support and hence subject to modification.

—Unallocated Child Support—

Mr. Lieberman argues that a court is not always empowered to modify child support, citing *Quarles v. Quarles*, 62 Md.App. 394, 406, 489 A.2d 559 (1985). He contends that in *Quarles* we recognized that a court has no authority to modify an unallocated award for alimony and child support where that award is nonmodifiable. Mr. Lieberman's reliance on *Quarles* is unfounded. There, the parties had entered into a separation agreement to provide $800 support for the wife and the two children, with no fixed allocation for alimony or child support; as the Court noted, "they intended the entire payment as alimony." *Quarles*, 62 Md.App. at 404, 407, 489 A.2d 559. This amount was not, according to the agreement, modifiable, nor were there any terminal events for these payments. *Quarles*, 62 Md.App. at 407, 489 A.2d 559. Mr. Quarles unilaterally reduced the amount upon the one son reaching his majority. He was found in contempt. We did not hold that the $800 sum for family support was not modifiable. We affirmed the ruling of the trial court that Mr. Quarles was in contempt as he could not unilaterally modify the award. This Court stated that, "despite the parties' agreement, child support is always modifiable by the court. Alimony, on the other hand, is modifiable or not, as the parties agree. Here, then, only the alimony award is non-modifiable." *Quarles*, 62 Md. App. at 405, 489 A.2d 559.

Mr. Lieberman also refers us to *Carey v. Carey*, 9 Kan.App.2d 779, 689 P.2d 917 (1984), to further bulwark his position that a nonmodifiable unallocated amount cannot be modified. In *Carey*, the parties entered into a *Lester* agreement which was reflected in the decree ordering the

husband to pay family support and alimony of $340 per month. Thereafter, the husband sought to reduce his support obligation by one-third because one of the two minor children had reached majority. The trial court denied the post-trial motion. The appellate court affirmed, holding that due to the unallocated family support award, the trial court had no jurisdiction to modify the amount except as provided by the agreement or by consent of the parties. The Kansas Court of Appeals did state that the court retains jurisdiction to modify child support payments on a change of circumstances which the parties cannot divest by agreement. *Carey,* 689 P.2d at 919. In *Carey,* the $340 payment to the wife was, according to the agreement and decree, to continue until the wife's death or remarriage.

Mr. Lieberman also refers us to certain language in *Smith v. Smith,* 79 Md.App. 650, 558 A.2d 798 (1989). In *Smith,* we referred to our prior unpublished opinion in that case where we expressly stated that " 'the support provision of paragraph eleven [, which relates to payment of unallocated alimony and child support,] is not subject to court modification.' " *Smith,* 79 Md.App. at 657, 558 A.2d 798. The parties in *Smith* agreed that it cost a specific figure to support the wife and children. The husband agreed to provide the difference between that figure and the earnings of the wife as "unallocated alimony and child support." The parties agreed they would consider modification under certain circumstances but no specific figures were established.

When the courts refer to "unallocated" in *Quarles, Carey* and *Smith,* they mean precisely that: "unallocated and unidentifiable." No set amounts for alimony or for child support are identifiable in these cases.

—Case at Bar—

In the instant case, it is clear what was alimony and what was child support. The payments would be reduced to $1,800 upon the remarriage of the wife or after May 1, 1988. This coupled with the prohibition against awarding

any alimony by the court after the May 1, 1988 payment, make clear that $1,800 is the child support allocation. This is confirmed by the $900 reduction if either child dies, has custody changed or marries. The alimony was not modifiable by agreement, but no alimony was payable after May 1, 1988. Regardless of whether we would be persuaded that the amount was unallocated family support prior to that date, it is patent that after that date only child support was being paid. The child support award is always modifiable.

—Revision Is Not Modification—

On a related point, Mr. Lieberman argues the court cannot modify child support and points us to two cases in which the Court refused modification. In *Platt v. Platt*, 302 Md. 9, 485 A.2d 250 (1984), he asserts the Court refused to modify a *Lester* agreement once it was enrolled. *Platt* may be relevant to this case, but it does not stand for the proposition Mr. Lieberman claims. In *Platt*, the *Lester* payments were in the agreement. But the decree, for reasons which are not readily apparent, provided that, instead of the $750 monthly payment for the wife and children, the award was for $700 child support and $50 alimony. After the IRS disallowed the full deduction, Mr. Platt sought to have the decree revised to the amounts set forth in the agreement. The Court held it was not appropriate to change the enrolled judgment. *Platt* simply is not apposite. The limitations relating to revision of enrolled judgments applied in *Platt*. On the other hand, the change of circumstances requirement applied to the instant case.

In *Ruthenberg v. Ruthenberg*, 229 Md. 118, 182 A.2d 347 (1962), two alimony *pendente lite* orders provided that the husband was to pay a lump sum for family support without specifying how much was for the children. The IRS required the wife to declare the entire sum she received under the orders. She then sought to have the orders revised under what is now Rule 2–535(b) to designate a specific amount as child support. The judgment had been entered over 30 days prior to the request for revision and hence,

was no longer subject to discretionary revision by the court. The Court of Appeals affirmed the trial court's refusal to do so, stating, at 229 Md. at 120, 182 A.2d 347, that neither court had

> "the means of determining whether the orders would have been the same if the master had known that it was intended by the wife that the husband should be required to pay taxes on the sums ordered to be paid. It is quite possible that the allowance made in the two orders might have been substantially different if this matter had been called to the attention of the master."

In both *Platt* and *Ruthenberg*, a revision under Rule 2–535(b) was sought on the ground of fraud, mistake or irregularity, and not a modification based on change of circumstances as now codified in § 12–104.

## EVIDENTIARY RULINGS

### —Estrangement of Children from Mr. Lieberman—

■ The trial judge permitted evidence indicating that, although Mr. Lieberman was allowed liberal visitation with the children, he failed to exercise any visitation for six and one-half years. In fact, there was evidence that on one occasion the boys sent cards to their father which were refused and marked "Return to Sender." Mr. Lieberman objects to the admission of this testimony on the grounds of relevancy and relies on *Holston v. Holston*, 58 Md.App. 308, 317, 473 A.2d 459, *cert. denied*, 300 Md. 484, 479 A.2d 372 (1984), where we stated that testimony regarding the present estrangement of the children is not a proper consideration in determining the amount of child support to be paid. Based on that holding, Mr. Lieberman contends that, since he admitted he had no contact with the children for six and one-half years, this was merely "emotional testimony which should not have been permitted." Mr. Lieberman contends this testimony is prejudicial. It probably is, but it is also relevant.

In this case, the testimony is relevant to the amount of support being sought. In *Holston*, the issue at hand was whether the father should pay the cost of the children's private or parochial school education. We held the father's level of contact with the children was irrelevant. In the instant case, the testimony of the father's absence impacted upon the medical expenses alleged to be related directly to the treatment of the boys by the father. Ms. Lieberman contends that the children's therapy was necessitated by Mr. Lieberman's actions. She alleged that both boys suffered significant anxiety and depression associated with their father's absence from the family.

The admission of testimony is largely within the discretion of the trial judge. *Durkin v. State*, 284 Md. 445, 453, 397 A.2d 600 (1979). Since the absence of the father was alleged to have a significant impact upon the need for continuing therapy, we do not see an abuse of that discretion by admitting further explanatory testimony. The necessity of this therapy had an effect on Ms. Lieberman's expenses, particularly if they would not be covered by insurance. Moreover, if she would need to pay a share, the sums she otherwise would have available for child care would be further reduced.

—Need for Therapy—

Mr. Lieberman contends the court erred in permitting Ms. Lieberman to testify that the boys needed therapy. He contends she is not an expert and hence not qualified to testify on the subject. Ms. Lieberman included, as a projected expense, $600 per month for the boys' therapy. She gave past experience as the basis of her estimate. She admitted the therapy was not being provided at the time, "[b]ecause Mark refuses to pay for it." The objection as made goes to the weight to be placed upon the testimony and not to its admissibility. Moreover, in the instant case, the children had been receiving therapy which was discontinued because of the lack of funds. Who could better identify the behavior of the children indicating a need for

outside help than the custodial parent? We see no merit in the objection.

—Exhibits # 1 and # 5—

Ms. Lieberman introduced Exhibit # 1, her current financial statement, and Exhibit # 5, a list of supplemental expenses for items she felt the boys needed such as tutoring, music lessons, a piano, vacation trips and a van. She was the owner of a 1983 Dodge Aries station wagon. Mr. Lieberman contends the court erred in admitting these exhibits on the basis that neither exhibit reflected presently existing needs. He objected to Exhibit 1 based on lack of cross-examination and hearsay and to Exhibit 5 based on relevance. Both exhibits were certainly relevant to the children's needs or potential needs and Ms. Lieberman's ability to meet those needs. As to cross-examination, although not utilized, Mr. Lieberman had the opportunity. As to hearsay, the exhibit in no way misled the trial judge who could evaluate the weight to be given to the various items—those which were based on actuality and those based on projections. We perceive no error.

—Exhibit # 6—

Ms. Lieberman introduced a letter she wrote to Mr. Lieberman which contained some hearsay. In that letter, she sought payment of the accrued therapy expenses. The trial judge stated he would excise any hearsay or prejudicial material from the letter. No specific request was forthcoming as to excision and the letter was admitted. This particular exhibit's relevance, however, is limited to the issue of breach of contract and contempt. Hence, it is beyond our jurisdiction for purposes of this appeal and must wait for another day to be resolved.

## CHILD SUPPORT INCREASE
—The Amount—

The trial court increased the support provided for the children from $900 per month each to $1,500 per month

each. While not conceding the authority of the court to do so in this case, Mr. Lieberman acknowledges that Maryland courts may ordinarily modify child support awards if there is a material change in the circumstances. *Reese v. Huebschman,* 50 Md.App. 709, 712, 440 A.2d 1109, *cert. denied,* 293 Md. 547 (1982); *Cole v. Cole,* 44 Md.App. 435, 439, 409 A.2d 734 (1979). He also recognizes that the trial court's decision in this area will not be disturbed on appeal unless the court acted arbitrarily or its judgment was clearly erroneous. *Tidler v. Tidler,* 50 Md.App. 1, 9, 435 A.2d 489 (1981); *Cole,* 44 Md.App. at 439, 409 A.2d 734. He contends that the modification as made here was clearly erroneous. He points out that many of the expenses are excessive and not exclusively for the ascertained needs of the children. He further argues that the award was based on the best interest of the child rather than the correct standard of modification based on change of circumstances. We will discuss the specific complaints of Mr. Lieberman, but before we do that, we will discuss the appropriate principles which should have guided the the court in making the modification. The jurisdiction to modify and the appropriateness in this case has already been examined in detail; hence, we turn directly to the manner by which the amount is to be determined.

—What is Included—

 In pursuing a modification, the court must first determine that there is a material change in circumstances. The court must then determine the amount of the award in light of those changes in circumstances. In *Cole,* 44 Md. App. at 439, 409 A.2d 734, we stated:

> "It is, of course, well settled in this State that a court of equity may upon a proper petition to do so modify a decree for alimony or child support at any time if there has been shown a *material change in circumstances* that justify the action." (Emphasis added.) (Citations omitted.)

We reaffirmed this holding in *Reese,* 50 Md.App. at 712, 440 A.2d 1109.

■ Turning to the instant case, the trial judge found that there was a material change in circumstances. He found that, between the time of the divorce decree and the time of the hearing in this case, Mr. Lieberman's gross income had risen from about $200,000 [5] to $386,800, his net income had risen to the significantly higher figure of $268,-878 and his net worth increased from increased from $23,-000 in 1983 to an admitted figure of over one million dollars. So far as Ms. Lieberman was concerned, she was receiving alimony as a part of the family support of $9,600 a year in 1983. Now she is working, making about $16,000 a year. Her financial statements, however, indicated a substantial increase in the total household expenses from the time of the agreement to the date of the trial. In addition, both children were older and had greater needs. The change of circumstances may be in the resources of one or both parents, *Lott v. Lott*, 17 Md.App. 440, 445, 302 A.2d 666 (1973), may be limited to a change in the general needs of one child or more than one child, or in a specific need of a child. *Becker v. Becker*, 39 Md.App. 630, 634, 387 A.2d 317 (1978).

Given the facts in the case *sub judice*, the trial judge's finding of a material change in circumstances is not clearly erroneous and will not be set aside. Mr. Lieberman argues that there was not much change in his standard of living since he opted to save a substantial portion of his increased income. Neither the trial judge nor we are impressed with this argument for two reasons: 1) his decision to save his money should not be used as a tactic to deprive his children; and 2) his standard of living did change in that he moved from a rented apartment of $582 a month to a $250,000

---

5. Mr. Lieberman testified that his 1983 gross income was between $200,000 and $220,000. Ms. Lieberman contended the proper sum was $160,000. This is the subject of some confusion since allegedly $160,000 was the figure furnished as the predicate for the 1982 separation agreement. Regardless of the factual correctness of Ms. Lieberman's position, the income as of 1983, the date of the court decree, is what is controlling for the change of circumstances.

luxury condominium with mortgage payments of $1,897 a month plus a $45 a month security system and $315 a month condominium fee; he secured a larger boat, traveled extensively, drove a new Lincoln Continental provided by his business, and he was generous with gifts to his children by a prior marriage.

Mr. Lieberman argues that the amount set was excessive for several reasons. First, he urges that the trial judge applied the doctrine of "best interests" of the child and failed to recognize that the doctrine of res judicata applied. As we held in *Lott* and reiterated in *Reese*, the doctrine of res judicata applies in the modification of alimony and child support and the court may not "relitigate matters that were or should have been considered at the time of the initial award." *Lott*, 17 Md.App. at 444, 302 A.2d 666. For example, this principle would preclude modification based on the need for orthodontia for a child where the trial judge originally found there was no need for it and there is no showing of increased need for the work when a modification is sought.

But the principle of res judicata would not necessarily preclude a modification to cover orthodontia if the reason for the original elimination of the orthodontia was based on lack of available funds and the parent is now in a changed financial position where it can be afforded. In other words, the fact that the original award did not provide for a particular need does not necessarily preclude revisiting that need if the resources later become available.[6] Res

---

6. We present the question in a relatively pure form. That is where a judge says, "I will not include this item in making the award." In the real world, the judge is presented with a list of needs and wants from essential to nonessential. The judge considers the list, considers other claims on the parents and the ability of the parents to meet these needs and comes up with a figure. In most cases, it is impossible to tell what the judge rejected or accepted in making the award. This may become even more prevalent when and if child support guidelines become presumptively correct, because there may be no list at all. Even now we find this situation to be a thorny problem and rely on the discretion of the trial judge so long as it is not abused.

judicata applies where the court concludes the need was not and is not valid. But it does not apply where the need was not met based on the inability of the parent to then pay. To hold otherwise would forever limit the children's station in life to their parents' station in life at the time of the divorce, which we have previously determined is untenable. *See Cole,* 44 Md.App. at 446, 409 A.2d 734. We were not pointed to a specific item upon which the trial judge violated this principle of res judicata.

Further, Mr. Lieberman quotes *Rand v. Rand,* 40 Md. App. 550, 554, 392 A.2d 1149, *vacated on other grounds,* 280 Md. 508, 374 A.2d 900 (1978), which states that child support

"is necessarily premised upon the assumption that the amounts paid, or to be paid, under the order are not excessive, and will, in fact, be applied exclusively to the ascertained needs of the child, whether directly or indirectly, and not to any extraneous purposes."

His complaint in this regard seems to be that some of the expenses listed also benefit Ms. Lieberman, such as the proposed new car. Just because part of the child support directly or indirectly benefits the custodian, that does not necessarily make it inappropriate.

### —Excessive—

Mr. Lieberman attacks some of the items as excessive or without substantial evidence to support them. Ms. Lieberman filed a statement showing $3,556 as actual expenses for the children per month and additional desirable items of $1,931 for a total of $4,487. The trial court awarded $3,000.

Mr. Lieberman has some specific arguments in this area and some general undefined arguments. He argues, *inter alia,* that Ms. Lieberman's loans and debt increased, that this was not an appropriate consideration as her mother should have "given" her money rather than lend it, that some of the expenses were for projected therapy, that there was no proof of need of the therapy or tutoring. We know of no reason why a child's grandmother is required to

support the children when the parents are able to do so. On balance, the financial statements came in since they were relevant and probative and the trial judge could give those statements such weight as he found appropriate.

Mr. Lieberman complains that too much of the household expenses and mortgage were apportioned to the children, that no college fund needed to be provided, and that an earlier financial statement showed lower expenses. As to the first complaint, the court may have made this adjustment, as it comes well within the $1,487 ultimately disallowed. This could likewise have been so on the college fund. Mr. Lieberman had an opportunity to cross-examine on the financial statement. We hold the trial judge made his decision based on all the evidence before him and his conclusion was not clearly erroneous.

### —Insufficient—

On the other hand, Ms. Lieberman complains the award was insufficient. We have reviewed the financial statements that are in the record. We have reviewed the testimony of the parties and we have considered the argument of counsel on both sides. Proper appellate discipline requires that the amount of the modification of the original amount should not and will not be "disturbed unless the chancellor's discretion was arbitrarily used or his judgment was clearly wrong." *Blumenthal v. Blumenthal*, 258 Md. 534, 541, 266 A.2d 337 (1970) (referring to alimony increase). We cannot find that this trial judge's discretion was arbitrarily used or that he was clearly wrong.

## COUNSEL FEES

### —Substantial Justification—

Appellant contends that counsel fees should not be awarded under Md.Fam.Law Code Ann. § 12–103 (1984). He points out that the award of counsel fees requires consideration of: (1) the financial status of each party; (2) the needs of each party; and (3) whether there was substantial justification for bringing or defending the proceeding.

His argument is that there was no substantial justification for Ms. Lieberman's bringing this action; hence, no fees can be awarded. He also argues that the court has no authority to hold him in contempt since the agreement was incorporated, not merged into the decree. Moreover, he could not be held in contempt since there was no order to pay a sum certain. We decline to examine the court's failure to enter an order for a sum certain or make a finding of contempt as it is not the subject of an order of the circuit court.

Substantial justification for Ms. Lieberman's bringing of the suit does exist. Mr. Lieberman urges us to conclude that there was no substantial justification to bring the action for modification of the child support. Even had we agreed, the trial judge did find for Ms. Lieberman which carries with it an implicit finding of very substantial justification. Moreover, we have of course held that the child support order is modifiable. Having so held, it must of necessity follow that the action was substantially justified. It further follows that we then must consider Ms. Lieberman's assignment of error that the award of attorney's fees was insufficient.

—Insufficiency of Fees—

The statement of legal fees, paralegal services and costs advanced for the period from March 28, 1984 through January 9, 1989 amounted to $14,769.50 for Ms. Lieberman. The trial court's opinion stated that Mr. Lieberman had already paid $1,000 toward those fees and awarded counsel an additional $5,000.

The trial judge is vested with a high degree of discretion in making an award of fees. *Lapides v. Lapides*, 50 Md.App. 248, 251, 437 A.2d 251 (1981). Often times a monetary award is involved or other assets are divided, so even though no reason is given, we understand why only partial counsel fees might be awarded. This is not such a case. The sole issues at trial involved the children and provisions for them. In exercising his or her discretion, the trial judge must consider and balance the required consider-

ations as articulated by the Legislature in § 12–103, which provides in pertinent part:

"(a) ... The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties;

\*　　\*　　\*　　\*　　\*　　\*

"(b) ... Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing or defending the proceeding."

The first is the financial status of the parties. There can be no doubt that the financial status of Ms. Lieberman pales in comparison to that of Mr. Lieberman. While her needs and those of the children appear less than Mr. Lieberman's, it is not because the needs are necessarily less, but because the funds available for those needs are less. Mr. Lieberman has the ability to support higher expenses than does she. There can be no doubt that there was substantial justification for bringing the proceeding.

What, then, could have accounted for an award that provides less than 41 percent of the costs and fees incurred? We simply cannot tell. On the bare record and in the absence of any reason, the award could be deemed arbitrary. In view of the circumstances of the parties, it is obvious that Ms. Lieberman's payment of part of the balance of the fees will result in a decrease of resources available for the children. Since we do not know why the trial judge awarded such a lesser sum, we cannot properly assess his exercise of discretion. We will therefore remand for him to consider and articulate his basis for the amount awarded. He must look at (1) whether the $14,769.50 was supported by adequate testimony or records; (2) whether

**602**

the work was reasonably necessary; (3) whether the fee was reasonable for the work that was done; and (4) how much can reasonably be afforded by each of the parties. He should make his award based on those considerations.

JUDGMENT AFFIRMED IN PART; JUDGMENT REMANDED IN PART AS IT RELATES TO COUNSEL FEES FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY MR. LIEBERMAN.[7]

---

7. In the exercise of our discretion, we direct all costs be borne by Mr. Lieberman.