SANDRA POLK *v.* KENNETH W. HARRIS

[No. 17, September Term, 1980.]

*Decided October 9, 1980.*

592

The cause was submitted on brief to MORTON, THOMPSON and LISS, JJ.

Submitted by *Stephen H. Sachs, Attorney General, Joseph B. Spillman, Assistant Attorney General, Joel J. Rabin, Assistant Attorney General, Starke M. Evans, State's Attorney for Caroline County,* and *Jennifer Bodine, Assistant State's Attorney for Caroline County,* for appellant.

No brief or appearance by appellee.

LISS, J., delivered the opinion of the Court.

This case raises issues concerning support rights of an illegitimate child arising out of the Paternity Proceedings subtitle of Article 16, Sections 66A — 66P of the Annotated Code of Maryland (1957, 1973 Cum. Supp.).

Kalinda Polk was born to Sandra Polk, the appellant, on February 14, 1976. The father was alleged to be Kenneth Harris, the appellee. On June 6, 1979, appellant filed a bill of complaint in the Circuit Court for Caroline County instituting a civil paternity proceeding against the appellee under Art. 16, Secs. 66A *et seq.* The bill of complaint, which sought to require the alleged father to contribute to the

support of a child, was prepared and signed by an Assistant State's Attorney for Caroline County, as is customary when an illegitimate child is receiving public assistance for its support from the Department of Social Services. Appellant also signed the bill of complaint, and her affidavit was attached to it.

The bill alleged that the appellee had executed a voluntary support agreement on May 28, 1976, in which he admitted paternity of Kalinda and agreed to pay $5.00 per week as support. It further alleged that at the time the bill was filed appellee was in arrears on the agreed upon support payments in the amount of $361.78. The bill prayed: that appellee be declared the father of Kalinda Polk; that custody of the child be awarded to the appellant; and that the appellee be required to pay the arrearages due plus a reasonable sum for future support of the child.

Attached to the bill as an exhibit was a copy of the agreement signed by the parties, which stated that Sandra Polk was the mother of the illegitimate child, Kalinda Polk, and that Kenneth Harris was the father of the child. The agreement also provided:

1. The said Sandra Polk shall have the primary custody and control of the said Kalinda Polk subject to the right of reasonable visitation by the said Kenneth Harris.

2. The said Kenneth Harris shall pay to Caroline County Dept. of Social Services the sum of Five Dollars ($5.00) per week, commencing on the 4th day of June, 1976 for the support and maintenance of Kalinda Polk until the said child shall attain the age of eighteen years, die, marry, or become self-supporting, whichever event first occurs, and that he pay the reasonable funeral expenses for the burial of said child should she die prior to reaching majority; and also that _____ shall pay the costs of any legal proceedings involved herewith.

3. That Kenneth Harris shall reimburse Sandra Polk for all medical and hospital costs incurred in connection with the birth of the said child.

In addition, the agreement included a notarized acknowledgment by the father as well as a certificate by the State's Attorney for Caroline County, which read:

### CERTIFICATE

I hereby certify that I am satisfied that the amount and terms of the above settlement are fair and reasonable, that Sandra Polk has been properly advised in the premises, and that she is competent to accept the settlement.

s/ J. Owen Wise
_____
State's Attorney for
Caroline County

We note that while the settlement agreement was approved by the State's attorney, it was never submitted to the presiding judge of the Circuit Court for Caroline County for his approval.

After service of process on the appellee, he filed an answer denying paternity, admitting execution of the agreement, requesting a blood test of the appellant, the child and himself, and requesting a jury trial. The blood tests were administered, and appellee was found not to be excluded as the putative father. On August 17, 1979, the Assistant State's Attorney, on behalf of the appellant, filed a verified motion for summary judgment submitting to the trial judge the agreement and admission of the appellee and attaching as an exhibit a "support obligation record." The record showed the amount paid as support for the child by the Department of Social Services and the amount paid by appellee on account of the agreed support order. The appellee filed an unverified answer to the motion which included no factual basis for his answer other than the bald assertion that he was not the father of the child. A hearing was held on the motion for summary judgment; legal memoranda were submitted, but no evidence was offered. The chancellor found that there was no genuine dispute as to a material fact whether the appellee was the father of the child, and he entered an order that appellee was Kalinda's father and was

liable for her support until she reached majority, married or became self-supporting. *See Wyand v. Patterson Agency, Inc.,* 266 Md. 456, 295 A.2d 773 (1972); *Hill v. Lewis,* 21 Md. App. 121, 318 A.2d 850 (1974). The chancellor reserved for a later date the question as to the amount of support required to be paid by the appellee and the disposition of the arrearages. Appellee has taken no appeal from the chancellor's summary judgment finding him to be the father of the child, and this issue is not before us.

At a later date, the issues deferred by the chancellor came on for hearing as follows:

1. If the court finds that the respondent is in arrears in his payments under the Settlement Agreement dated the 28th day of May, 1976, how may the nonpayment be enforced; more specifically, do the enforcement provisions of Sec. 66J of Art. 16 apply?

2. Can the court require of the respondent in the future to pay any more than he covenanted to pay in said Agreement; more specifically, do the provisions of Sec. 66H of Art. 16 apply?

The chancellor, after the hearing, answered both of these questions in the negative. It is from these rulings that the instant appeal is taken. We conclude that the chancellor was correct in his ruling on the first question and incorrect in his ruling on the second.

1.

There are three sections of Article 16, Sections 66A-P which are pertinent to this dispute. Section 66J (a) (Enforcement of orders) provides:

The orders of court directing payments for the support and maintenance of the child or with respect to any other matter are enforceable in the same manner and to the same extent as other orders of the equity courts of this State, including, but not limited to, citation and imprisonment for contempt. The person failing to make support payments as

ordered shall be served with an order directing him to show cause on a specified date why he should not be held in contempt. Should he fail to appear in response to a notice served upon him or prove unavailable for service, the court shall issue its warrant for the person's apprehension and arrest in the manner provided in § 66E (c) of this subtitle. If the court shall find that the person cited has failed to comply with the support order while possessing the means to have done so, the court shall find the person guilty of civil contempt and may commit him to jail or any other institution of penal confinement in this State until he shall comply with the support order or otherwise purge himself of his contempt.

Section 66L provides for a voluntary agreement for support and maintenance as follows:

Either before or after the filing of a bill or petition to establish paternity and to charge the putative father of an illegitimate child or children with his or their support and maintenance, the person alleged to be the father of the child or children, whether he admits or denies paternity, may propose to make a settlement with respect to his or their support and maintenance, either in a lump sum, installments, or otherwise. If the complainant or petitioner agrees to accept the settlement and the State's attorney is satisfied that the amount and terms of the settlement are fair and reasonable and that the complainant or petitioner has been properly advised in the premises and is competent to accept the settlement, an agreement shall be prepared and duly executed and submitted to the court for approval. In the event the court approves the agreement, the terms thereof shall be incorporated in an order to be passed by the court, which order shall be enforceable in all respects and to the same extent as any other order passed after a hearing.

Section 66H (a) (1) provides for the entry of a court order for support under the following circumstances:

> If the court or jury, as the case may be, finds against the defendant alleged to be the putative father, the court shall pass an order declaring the defendant to be the father of the child and providing for the support and maintenance of the child. The order shall specify the sum to be paid by the defendant weekly or otherwise until the child reaches the age of 18 years, dies, marries or becomes self-supporting, whichever event first occurs. However, if the child, having reached 18 years of age, is destitute of means and unable to support himself by reason of mental or physicial infirmity, the court may require payments to be made or continued during the continuance of the mental or physical infirmity.

In the memorandum opinion filed by the chancellor in this case, he noted that the settlement agreement entered into by the parties and approved by the State's attorney was never submitted to the trial court for its approval. As the broad right to enforce the settlement agreement under Section 66L is predicated upon a submission of the agreement to the court, the court's approval of the agreement, and the incorporation of the terms of the agreement in an order to be signed by the court, then a failure to comply with these requirements would make the agreement not "enforceable in all respects and to the same extent as any other order passed after a hearing." Further, the appellant is not entitled to enforce the payment of these arrearages in an equity proceeding, as they arise out of an express contract enforceable, if at all, only at law. *See Groner v. Davis,* 260 Md. 471, 272 A.2d 621 (1971); *Kriedo v. Kriedo,* 159 Md. 229, 150 A.2d 720 (1930). We conclude that the chancellor was correct in his finding that the collection of the arrearages in this case could not be enforced under the provisions of Section 66L of Article 16.

## 2.

We do not agree, however, with the chancellor's conclusion as to the second issue in this case. The chancellor treated the proceedings as if they were a submission of the settlement agreement to him for his approval under Section 66L. A reading of the bill of complaint, the answer, and a consideration of the positions of the parties convinces us that the agreement was before the court only for the purpose of establishing paternity. Once it was established that the parties had failed to comply with an essential element of Section 66L, that section was irrelevant to the disposition of the case. Even if the settlement agreement had been approved by the court and incorporated into an order, we do not consider whether the court would have been precluded from increasing or decreasing the amount to be paid for maintenance and support of the illegitimate child. That issue is not before us. In this case, the agreement was submitted to the court in order to show appellee's written acknowledgment of paternity — and not as an attempt to adhere to the requirements of Section 66L of Article 16. Appellee, at the time of the institution of the paternity bill, had repudiated the terms of the agreement by terminating the support payments. He denied his paternity, insisted on blood tests, and resisted the court's determination of his being the father of the child. Because the appellee has filed no appeal, we find no significance in the fact that appellee's paternity was determined by summary judgment.

Equity courts in this State have plenary authority to determine questions concerning the welfare of children within their jurisdiction. *Ross v. Hoffman,* 280 Md. 172, 372 A.2d 582 (1977); *Price v. Price,* 232 Md. 379, 194 A.2d 99 (1963). The paramount concern of the court must be to secure the child's best interest. *See Stancil v. Stancil,* 280 Md. 530, 408 A.2d 1030 (1979); *Hill v. Hill,* 49 Md. 450, 33 Am. Rep. 271 (1878). Equity must exercise its authority to protect the best interest of the child even if there is an agreement between the parties. In *Stancil, supra,* the Court of Appeals said:

Section 28 [of Article 16], and the decisions of this

Court, make it quite clear that the chancellor cannot be handcuffed in the exercise of his duty to act in the best interest of a child by any understanding between the parties. [286 Md. at 535.]

*See also Glading v. Furman,* 282 Md. 200, 383 A.2d 398 (1978); *Tvardek v. Tvardek,* 257 Md. 88, 261 A.2d 762 (1970). While none of these cases involve illegitimate children, we see no basis for making any differentiation between the rights of legitimate and illegitimate children as to payments for maintenance and support. As the Court of Appeals said in *Dorsey v. English,* 283 Md. 522, 529, 390 A.2d 1133 (1978), the Paternity Proceedings statute "seeks to place the burden of support of an illegitimate child on those responsible for its birth." One of the reasons for the enactment of the statute is "the promotion of the general welfare and best interests of such children by securing to them, as near as practical, the same right of support, care, and education as legitimate children." Article 16, § 66A; *Dorsey v. English, supra.*

We conclude that Section 66L of Article 16 is inapplicable here and that this case should have been treated as a civil paternity proceeding. Under these circumstances, the chancellor should have held a hearing to determine the needs of the child for maintenance and support and the ability of the parents to meet these needs, and he should have entered an appropriate order as to the support obligation of the parties pursuant to Section 66H (a) (1). We, therefore, shall remand for further proceedings.

> *Case remanded for further proceedings and entry of appropriate decree not inconsistent with this opinion.*
> *Costs to be divided.*