591 A.2d 888

**Apryl Lynn TANNEHILL**

v.

**George Bruce TANNEHILL.**

**No. 1489, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

June 28, 1991.

6

Scott A. Bowling, Waldorf, for appellant.

George Bruce Tannehill, pro se.

Argued before WILNER, C.J., and ROSALYN B. BELL and CATHELL, JJ.

ROSALYN B. BELL, Judge.

This appeal arises from a dispute over the application of the Maryland Child Support Guidelines in a split custody case. While we do not agree with all of Ms. Tannehill's arguments, we do agree that the child support award was incorrectly calculated.

Apryl Lynn and George Bruce Tannehill were married on April 6, 1977. Four children were born of the marriage: Israel Jacob, born October 30, 1977; Autumn Snow, born December 26, 1978; Summer Dawn, born July 21, 1980; and Christian Starr, born October 4, 1982.

The three older children were born healthy. Unfortunately, the youngest child, Christian, was born with a heart defect that required open heart surgery a few days after her birth. Shortly thereafter, Christian suffered a brain hemorrhage. She has cerebral palsy and epilepsy and is mentally retarded.

The parties separated on July 28, 1988. On August 11, 1988, Mr. Tannehill filed a complaint for a limited divorce and pendente lite relief. On September 20, 1988, Ms. Tannehill filed a counter-complaint for a limited divorce, custody and support.

In March of 1989, the case came before the Circuit Court for Charles County for a hearing on the pendente lite issues. On April 19, 1989, the trial court entered an order, pursuant to an agreement reached in open court, granting Mr. Tannehill custody of all four children. The trial court deferred its ruling on the child support issue until the hearing on the final divorce.

On November 6, 1989, Christian was admitted to the Mount Washington Pediatric Hospital in Baltimore.[1] Apparently, Mr. Tannehill had Christian placed in the hospital without Ms. Tannehill's knowledge. There is some dispute regarding whether Christian was responding to treatment. No medical evidence or testimony, however, was ever offered on this point. Ms. Tannehill discovered that Christian had been hospitalized and filed a motion requesting that custody of Christian be awarded to her. On February 9, 1990, the parties entered into a consent order placing Christian in the custody of her mother. After Christian was removed from the hospital, she resided with Ms. Tannehill.

In the meantime, Mr. Tannehill had filed a supplemental complaint for an absolute divorce and Ms. Tannehill had filed an answer. The case came on for trial on September

---

1. Ms. Tannehill's motion requesting custody of Christian alleges that Christian was hospitalized because Mr. Tannehill was not able to care for her. Mr. Tannehill admitted the truth of this allegation in his answer to this motion.

4, 1990. The parties had reached a settlement on the issues of marital property, custody and visitation. The case proceeded to trial on the issues of the grounds for divorce and child support.

The trial court determined that an absolute divorce should be granted on the grounds of a voluntary separation and that Ms. Tannehill should pay Mr. Tannehill $517 per month as child support for the three children in his custody. The trial court noted that all of Christian's medical needs, except for the special food required for tube feeding and certain medications, were paid for by insurance. The trial court calculated that the special foods and medications for Christian would total $100 per month. The trial court found that Ms. Tannehill had voluntarily removed Christian from the hospital and that all of Christian's expenses were being paid for while hospitalized.[2] Therefore, the trial court concluded that Mr. Tannehill would not pay any support to Ms. Tannehill.

The trial court then calculated the amount of child support Ms. Tannehill would owe Mr. Tannehill. Ms. Tannehill is a registered nurse and her gross income was $2,304 per month. The trial court reduced that amount by $660 to cover the time Ms. Tannehill would lose from work taking Christian to doctors and caring for Christian at home.[3] Mr. Tannehill is unemployed, but receives $1,375 per month in disability and social security benefits.[4] Thus, the parties' combined monthly adjusted actual income is $3,019. The trial court calculated that the support obligation for the three children would be $857. He then added the $100

---

**2.** It is not really clear whether all Christian's expenses except medication continued to be paid from outside sources and the trial judge did not make a clear finding in that regard.

**3.** No objection or argument has been raised on this point.

**4.** We note that, while Ms. Tannehill's income is taxable, Mr. Tannehill's income may not be. If his income is tax exempt, the parties face an unlevel playing field. The guidelines, however, do not provide for a grossing up of tax exempt income. Nevertheless, because this issue has not been raised, we make no holding on the subject.

extraordinary expenses for Christian to this amount. The trial court calculated that Ms. Tannehill's proportional share, 54 percent, would be $517.

On September 28, 1990, the trial court entered an order granting Mr. Tannehill an absolute divorce. The order also required Ms. Tannehill to pay Mr. Tannehill $517 per month for child support. Ms. Tannehill has appealed from that order, arguing that the trial court incorrectly calculated the child support award.

## RULE 8-501

Before addressing the merits of this case, we must address whether the parties' record extract is in accordance with the Maryland Rules. Rule 8-501(c) provides that the record extract must contain all parts of the record that are reasonably necessary for the determination of the issues presented. That Rule also mandates that the record extract include the judgment from which the party has appealed. Rule 8-501(c).

In the instant case, the judgment of the trial court is the written order of September 28, 1990. That order, however, was not provided in the record extract. Therefore, Ms. Tannehill has not complied with the requirements of Rule 8-501(c).

The sanctions for noncompliance with this Rule are contained in Rule 8-501(*l*), which provides that this Court "may dismiss the appeal or make any other appropriate order with respect to the case." Dismissal of an appeal is discretionary. *Kemp-Pontiac-Cadillac, Inc. v. S & M Constr. Co.*, 33 Md.App. 516, 524, 365 A.2d 1021 (1976). In the exercise of our discretion and in the interest of justice, we decline to dismiss this appeal. Mr. Tannehill does not appear to have been prejudiced by this omission. The order itself merely summarizes the decisions made at the hearing and that hearing transcript was included in the record. Moreover, because this case involves child support, it is the children who would suffer, rather than the parties, if this

appeal were dismissed. Nevertheless, we admonish counsel for Ms. Tannehill in the future to follow Rule 8–501(c), dealing with the record extract.

## THE CHILD SUPPORT GUIDELINES

In February of 1989, the General Assembly enacted the Maryland Child Support Guidelines as an emergency measure. Md.Fam.Law Code Ann. § 12–201 through § 12–204 (1984, 1990 Cum.Supp.). These guidelines were adopted in conformance with the Child Support Enforcement Amendments of 1984, 42 U.S.C. §§ 651–667 (1982 & Supp. II 1984), and federal regulations, 45 C.F.R. § 302.56 (1990). The guidelines serve several purposes. First, the guidelines were intended to remedy the low levels of most child support awards relative to the actual cost of rearing children. Second, the guidelines were intended to improve the consistency and equity of child support awards. Third, the guidelines were intended to improve the efficiency of court processes for adjudicating child support awards. Additionally, the failure to adopt such guidelines could have resulted in the loss of up to $35 million in federal funds for Aid to Families with Dependent Children. *See generally* Senate Judicial Proceedings Committee, *Bill Analysis*, S.B. 49 (1989).

As originally adopted, the guidelines were advisory only and did not give rise to any presumption that the amount arrived at through use of the guidelines was correct. 1989 Md.Laws ch. 2. On April 10, 1990, however, the General Assembly amended the guidelines, mandating their use. The amount of support arrived at through use of the guidelines is presumptively correct. 1990 Md.Laws ch. 58.

The guidelines do not specifically address split custody cases.[5] The guidelines, however, provide that the basic

---

5. As originally drafted in 1989, the guidelines did provide a formula for calculating child support in split custody cases. 1989 Md.Laws ch. 2. Those sections were deleted, however, because the Judiciary Committee felt that the issue needed further study. The Committee also

child support obligation is determined in accordance with the schedule of basic child support obligations. This basic support obligation is divided between the parents in proportion to their income. § 12–204(a). For example, if the parents have a combined adjusted actual income [6] of $2,000 per month and two children, the basic child support obligation is $515 per month. If each parent has an adjusted actual income of $1,000, each parent would be responsible for 50 percent of the basic child support obligation, or $257.50. The noncustodial parent would pay the custodial parent $257.50 per month.

█ A logical extension of these provisions to split custody cases would entail several steps. First, the basic support obligation would be determined separately for the number of children in the custody of each parent. Next, the amount of child support each parent owes the other is calculated by multiplying each parent's proportionate share of the combined adjusted actual income, represented as a percentage, by the amount of the basic support obligation for the children in the other parent's custody. Finally, to avoid having the parents exchange checks, the parent owing the greater amount of support would pay the other parent the difference between the two amounts.

█ For example, in the case *sub judice*, the combined adjusted actual income of the parties is $3,019 per month. Mr. Tannehill's proportional share of this total is 46 percent and Ms. Tannehill's proportional share is 54 percent. Mr. Tannehill has custody of three children while Ms. Tannehill has custody of one child. According to the table in

---

noted that split custody is a rare occurrence and that the deletion would have no effect on compliance with federal law. House Committee File, S.B. 49 (1989).

**6.** Adjusted actual income means the actual income of a person minus any preexisting child support obligations actually paid; alimony or maintenance obligations actually paid; and the actual cost of providing health insurance for a child for whom the parents are jointly and severally responsible. Combined adjusted actual income is the total of the adjusted actual income of both parents. § 12–201(d) and (e).

§ 12–204(e), the basic child support obligation due Mr. Tannehill for the three children in his custody would be $868.[7] The basic support obligation due Ms. Tannehill for the child in her custody would be $446, plus the $100 extraordinary medical expenses.[8] Ms. Tannehill would owe Mr. Tannehill 54 percent of the $868 child support obligation for the three children in his custody, or $468.72. Mr. Tannehill would, in turn, owe Ms. Tannehill 46 percent of the $546 child support obligation for the one child in her custody, or $251.16. Ms. Tannehill would pay Mr. Tannehill the difference between $468.72 and $251.16, or $217.56.

This, however, is not what the trial court did in this case. The trial court found that the basic support obligation for the three children in Mr. Tannehill's custody was $857. The trial court found that most of the expenses for Christian's care, both in the hospital and at home, were paid for through public funds. The trial court also found, however, that Christian had extraordinary medical expenses of $100 for special foods and medications. The trial court then added the $100 to the $857 and calculated that Ms. Tannehill owed Mr. Tannehill 54 percent of that amount or $517 per month. The trial court's statements indicate that it thought these calculations were in accordance with the child support guidelines. These calculations, however, were not.

As noted previously, there is a rebuttable presumption that the amount of child support calculated under the guidelines is the correct amount of child support to be awarded. § 12–202(a). The statute also provides, however, that the court may deviate from the guidelines if the court determines "that the application of the guidelines would be

---

7. Where the combined adjusted actual income falls between the amounts shown in the schedule, the next highest amount is used. § 12–204(c).

8. Under § 12–201(h)(1), extraordinary medical expenses are defined as "uninsured expenses over $100 for a single illness or condition" and are to be divided between the parents as is the basic child support. § 12–204(h).

unjust or inappropriate in a particular case." § 12–202(a)(2)(iv).

In determining whether such a deviation from the guidelines is warranted, a court may consider:

"1. the terms of any existing separation or property settlement agreement or court order, including any provisions for payment of mortgages or marital debts, payment of college education expenses, the terms of any use and possession order or right to occupy to the family home under an agreement, any direct payments made for the benefit of the children required by agreement or order, or any other financial considerations set out in an existing separation or property settlement agreement or court order; and

"2. the presence in the household of either parent of other children to whom that parent owes a duty of support and the expenses for whom that parent is directly contributing."

§ 12–202(a)(2)(iii).

The unique circumstances of this case do not correspond to any of the considerations listed above. Reading the statute as a whole, however, leads us to conclude that this list of considerations, while comprehensive in many respects, is not exclusive. The Legislature has made it clear that a departure from the guidelines is warranted where their application would be unjust or inappropriate. No list of factors or considerations could identify every situation in which the application of the guidelines would produce an unjust or inappropriate result. Rather, these considerations provide an analytical framework within which a judge may determine the appropriate award of child support. For example, the factors contained in § 12–202(a)(2)(iii) delineate situations that affect the financial resources of the parents or the financial needs of the children. To construe this statute so as to exclude other relevant financial considerations that have the same or similar impact as the considerations listed above would be in contravention of the legislative intent to prevent unjust or

inappropriate results. We hold that the facts, as found by the trial court, could support a departure from the child support guidelines.

Our inquiry cannot end here, however. The child support guidelines provide that, where the trial court determines that a departure is warranted, the court must make a written finding or a specific finding on the record stating the reasons for the departure. § 12–202(a)(2)(iv). Those findings must state the amount of child support that would have been required under the guidelines; how the order varies from the guidelines; and how the finding serves the best interests of the children. § 12–202(a)(2)(iv).

▮ As noted previously, the trial court departed from the guidelines when it ordered Ms. Tannehill to pay Mr. Tannehill $517 per month in child support. The trial court, however, did not make the requisite findings in accordance with § 12–202(a)(2)(iv). The trial court did not calculate the amount of child support due under the guidelines or state how the order varied from the guidelines. Additionally, the trial court found that its order served the best interests of the three children in Mr. Tannehill's custody by not depriving them unnecessarily of scarce resources. The trial court, however, did not state how the order served Christian's best interests. Thus, we must vacate the order of the court and remand the case for the necessary findings.

▮ Even if a departure from the guidelines were warranted and the requisite findings had been made, a remand would still be necessary to correct certain errors in the trial court's calculations. First, the trial court found that, under the guidelines, the basic support obligation for the three children in Mr. Tannehill's custody was $857. This amount would have been correct if the combined adjusted actual income of the Tannehill's had been between $2,950 and $3,000. The Tannehills' combined adjusted actual income, however, was $3,019. The guidelines provide that, when the combined adjusted actual income of the parents falls between the amounts shown in the schedule, the next

higher amount is used. § 12–204(c). Thus, the basic support obligation for the three children should have been $868. Although Mr. Tannehill did not cross appeal, we are remanding this case for a recomputation of the amount of child support. The trial judge should start out with the correct figures.

 Moreover, the court erred in adding the $100 in extraordinary medical expenses for Christian to the basic child support obligation for the other three children and multiplying that amount by 54 percent. In effect, the court ordered Ms. Tannehill to pay Mr. Tannehill an additional $54 for expenditures *she* was making on behalf of Christian. Even if the trial judge decided to deviate from the guidelines and disallow basic support for Christian, he should have first calculated Ms. Tannehill's proportionate share of the basic child support obligation for the three children. This would be 54 percent of $868, or $468.72. The trial court then should have calculated Mr. Tannehill's proportionate share of Christian's extraordinary medical expenses. This would be 46 percent of $100, or $46. The trial court should have subtracted the $46 from the $468.72 and ordered Ms. Tannehill to pay Mr. Tannehill that amount, or $422.72 per month if the $100 was to be considered.

Therefore, this case will be remanded to the trial court to determine whether a departure from the guidelines is warranted under the circumstances of this case. If the trial court concludes that a departure is warranted, the specific findings required by § 12–202(a)(2)(iv) must be made. An appropriate amount of child support should then be awarded. If the trial court concludes that no departure is warranted, the trial court should calculate the amount of child support due in accordance with this opinion.

JUDGMENT AS TO CHILD SUPPORT VACATED. JUDGMENT OTHERWISE AFFIRMED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE BORNE EQUALLY.