612 A.2d 313

Lorely **SHRIVASTAVA**

v.

**Amnon MATES.**

No. 1796, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Sept. 8, 1992.

Phillip L. Felts (Schuman, Kane, Felts & Everngam, Chartered on the brief), Bethesda, for appellant.

Floyd Willis, III (Willis & Beck on the brief), Rockville, for appellee.

Argued before BISHOP, FISCHER and HARRELL, JJ.

HARRELL, Judge.

Appellant, Lorely Shrivastava, challenges the 16 July 1991 order of the Circuit Court for Montgomery County denying her motion to modify child support. The principal question raised by this appeal is whether a binding agreement for child support between the parties is, in and of itself, a sufficient reason for deviation from the child support guidelines, codified as Md.Fam.Law Code Ann. § 12–201, *et seq.* (1991 Repl.Vol.). For reasons we shall explain,

we answer this question in the negative. We also reject appellee's, Amnon Mates', contention that the fact that such an agreement was entered into prior to the adoption of the guidelines bears significance.

### *Facts*

Appellant and appellee were divorced on 3 August 1983. The two children born of the marriage, Rafael David and Jonathan Jacob, were then ages six and three, respectively. The parties' divorce decree incorporated a Voluntary Separation and Property Settlement Agreement (Agreement), which had been executed on 23 April 1982. It allocated child support as follows:

D. *Support of Children*

1. a. Subject to the provisions of paragraph (b) herein and paragraph 2 below [appellee] shall pay to [appellant] the sum of $375.00 per month per child, for a total of $750.00 per month for the two children, for the support and maintenance of the two minor children.

. . . . .

b. [Appellee] shall not be required to make payments for the support and maintenance of either child for any period of time during which said child remains in [appellee's] care for two consecutive weeks or longer.

2. Said payments for the support of the minor children shall be changed or terminated as follows: (a) said payments shall increase starting May 31, 1983, and each May 31st thereafter by the same percentage as [appellee's] cost-of-living adjustment increases his income . . .; (b) said payments shall be changed at such time as [appellant] remarries at which time the payments shall be renegotiated so that [appellee] will provide only out-of-pocket costs for food, clothing and other similar expenses of the children not including lodging in [appellant's] then marital abode; (c) said payments shall terminate as to each child of the first to occur of the following events: (1) death of child; (2) arrival at age eighteen (18) years; (3)

marriage; (4) emancipation by full time employment; (5) death of [appellee].

3. As long as [appellee] is employed by the World Bank or is in another employment providing comparable health insurance, [appellee] shall maintain health insurance coverage for the children and shall pay the medical and dental (including orthodontia) expenses for the children not paid by insurance, provided that [appellant] consults with [appellee] prior to undertaking any such non-paid expenses in excess of $500.00 per year per child. The duty under this section shall terminate as to each child as provided in paragraph D(2)(c), *supra.*

4. In addition to the foregoing, [appellee] shall pay all the educational costs of the children provided that the selection of school and/or college shall be arrived at by mutual agreement of [appellee] and [appellant]. The term educational costs as used in this Agreement means school tuition, fees and books beginning at pre-school kindergarten at age 5, through the full cost of a college education for each child. [Appellee's] obligation hereunder shall continue, with respect to each child, for four years of college, regardless of whether or not such child shall have attained majority.

On 21 February 1984, the amount of child support was modified by consent order. On 7 March 1990, appellant filed a Petition for Modification of Child Support (Petition) based on the adoption of the child support guidelines.[1] At that time, appellee's monthly child support obligation under the Agreement was $695.00.

Hearings on the Petition were held before Domestic Relations Master S. Michael Pincus on 7 January and 21 February 1991. On 26 February 1991, the Master issued his

---

1. "As originally adopted, the guidelines were advisory only and did not give rise to any presumption that the amount arrived at through use of the guidelines was correct. On April 10, 1990, however, the General Assembly amended the guidelines, mandating their use." *Tannehill v. Tannehill,* 88 Md.App. 4, 11, 591 A.2d 888 (1991) (citations omitted).

Report and Recommendations, along with a proposed order. The Master concluded, *inter alia,* that use of the guidelines would result in a monthly child support obligation of $1756.00 and, therefore, application of the guidelines was mandated under § 12–202(b).[2] The Master recommended that appellee's child support obligation only be increased to $1,000.00 per month. The Master arrived at this figure by using the guidelines and then subtracting certain of appellee's obligations under the Agreement, such as future college expenses and insurance costs.

Both parties filed exceptions to the Master's Report and Recommendations. After a hearing on the exceptions, the circuit court accepted the Master's Report but rejected his Recommendations, reasoning that application of the guidelines was an all-or-nothing proposition. "You can't ... mix apples and oranges. You can't say that the guidelines apply and then take away from them." Instead, the court concluded that use of the guidelines would be unjust and inappropriate in the case *sub judice.* The court apparently based this conclusion upon the existence of the Agreement:

> Here we have a very—what I find a very unusual voluntary separation and property settlement agreement. It doesn't really have to be even unusual, but in this case it was. If you look at the way the child support was set up, it was set up to pay a certain amount of money. There was provision for college education ... there was also provision that if [appellant] remarries, the payments are going to be renegotiated to a certain amount and, in fact, they were. [There was a provision t]hat [appellee] would only provide out-of-pocket costs for food, clothing and other similar expenses not including lodging and [appellant]'s then marital abode.

---

**2.** Section 12–202(b) creates a rebuttable presumption that a material change in circumstances justifying modification of a child support award exists where use of the guidelines would result in a change in a child support award of 25% or more. *See infra,* § 2.

[The agreement] also provided for an automatic cost of living adjustment as [appellee's] income went up. It is clear that the parties, for whatever reason, struck a bargain. They struck a bargain here which represented the results of a negotiation.... [B]oth sides were represented by counsel....

Why did they enter into the agreement that they entered into? I don't know why. *If the application of the guidelines leads to a result which the parties didn't negotiate for and didn't bargain for, then the Court determines that would be unjust and inappropriate.* (Emphasis added.)

Having concluded that use of the guidelines would be unjust and inappropriate, the court declined to consider the Petition and ordered that the case be dismissed without prejudice.

I think the position that [appellant] has to be in is if there is a sufficient change in circumstances from that contemplated in the agreement, that appropriate petition has to be filed and a factual record made. Then [appellant] can come up for a decision based not on the guidelines, but on the facts and circumstances of this case.

We shall expand upon the facts of the instant case as necessary during our discussion of the questions presented.

### *Discussion*

■ Initially, we are presented with a motion to dismiss the appeal on the ground that appellant improperly appended to her brief a standardized worksheet for determination of the appropriate amount of child support under the guidelines.[3] Under subsection (a)(8) of Rule 8–602, we may dismiss an appeal if "the style, contents, size, format, legibility, or method of reproduction of a brief, appendix, or record extract does not comply with Rules 8–112, 8–501, 8–503, or Rule 8–504." Rule 8–603(a)(3) provides, however,

---

**3.** Md.Fam.Law Code Ann. § 12–203(a) (1991 Repl.Vol.) authorizes the Court of Appeals to issue such a worksheet.

that a motion to dismiss based on Rule 8–602(a)(8) shall be filed ten days after the appellant's brief was or should have been filed pursuant to Rule 8–502. Appellant's brief was filed on 31 March 1992, but appellee did not file a motion to dismiss until 11 May 1992. Thus, appellee failed to comply with Rule 8–603(a)(3). We shall, therefore, deny the motion to dismiss.

1.

Appellant contends that there was insufficient evidence before the court to support its finding that application of the guidelines would be unjust or inappropriate in the instant case, and that the court failed to make the necessary findings accompanying its departure from the guidelines. We agree and explain.

The law and policy of this State is that the child's best interest is of paramount importance and cannot be altered by the parties. *See Lieberman v. Lieberman,* 81 Md.App. 575, 588, 568 A.2d 1157 (1990) ("A parent cannot agree to preclude a child's right to support by the other parent, or the right to have that support modified in appropriate circumstances"); *Polk v. Harris,* 46 Md.App. 591, 598–99, 420 A.2d 1004 (1980), *quoting Stancill v. Stancill,* 286 Md. 530, 535, 408 A.2d 1030 (1979) ("The chancellor cannot be handcuffed in the exercise of his duty to act in the best interest of a child by any understanding between the parties"); *Rand v. Rand,* 40 Md.App. 550, 554, 392 A.2d 1149 (1978) ("The fixing of child support derives from the obligation of the parent to the child, not from one parent to another"). A parent has a legal obligation to provide support for the child. *Id.*

This policy is codified by the child support guidelines. *See Tannehill v. Tannehill,* 88 Md.App. 4, 11, 591 A.2d 888 (1991) (Guidelines intended "to remedy the low levels of most child support awards relative to the actual cost of rearing children" and "improve the consistency and equity of child support awards"). The guidelines require a

trial court to presume, unless rebutted, that the amount of child support dictated by the guidelines is correct. *Id.* The guidelines include specific language regarding the review of agreements for child support. Subsection (2) of § 12–202(a) provides, in pertinent part, as follows:

(2)(i) There is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines set forth in this subtitle is the correct amount of child support to be awarded.

(ii) The presumption may be rebutted by evidence that the application of the guidelines would be unjust or inappropriate in a particular case.

(iii) In determining whether the application of the guidelines would be unjust or inappropriate in a particular case, the court may consider:

1. *the terms of any existing separation or property settlement agreement* or court order, including any provisions for payment of mortgages or marital debts, payment of college education expenses, the terms of any use and possession order or right to occupy to the family home under an agreement, any direct payments made for the benefit of the children required by agreement or order, or any other financial considerations set out in an existing separation or property settlement agreement or court order; and

2. the presence in the household of either parent of other children to whom that parent owes a duty of support and the expenses for whom that parent is directly contributing. (Emphasis added.)

Judge Rosalyn B. Bell, writing for this Court in *Tannehill*, 88 Md.App. at 14, 591 A.2d 888, observed that the considerations set forth in subsection (2)(iii) of § 12–202(a) "delineate situations that affect the financial resources of the parents or the financial needs of the children." While the guidelines do not exclude "other relevant financial considerations that have the same or similar impact as the considerations listed[,]" *id.,* the terms of an agreement for

child support between the parties are relevant *only* to the extent that they impact upon the financial resources of the parents or the financial needs of the children.

■ That this was the intent of the General Assembly is demonstrated by an examination of subsection (2)(iv) of § 12–202(a). It provides that, while a trial court may deviate from the guidelines if application thereof would be unjust or inappropriate, the court must make specific written or oral findings supporting such deviation, including:

A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines;

C. how the finding serves the best interests of the child; and

D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, the estimated value of the items conveyed.

§ 12–202(a)(2)(iv). A hypothetical example is instructive. Assume that application of the guidelines in a particular case would force a supporting parent to pay more than the amount of child support dictated by the guidelines, because the parent has conveyed items of value under the terms of an agreement instead of paying a portion of the child support presumed under the guidelines. In such a situation, the terms of the agreement clearly impact upon the financial resources of the parents, because one parent's financial resources have been functionally decreased, while the other's have been functionally increased. It may also have an effect upon the child's needs if the items conveyed would otherwise have to be purchased for the child. The trial court, in finding that departure from the guidelines is warranted, may explain that the best interests of the child are served because the child is, in effect, receiving the amount of support to which it is presumptively entitled under the guidelines. Thus, the requirement that a trial court make specific written or oral findings supporting departure from the guidelines effectively restricts the

court's consideration of the terms of an agreement for child support between the parties to the impact of that agreement upon the financial resources of the parents or the financial needs of the children.

█ In the case *sub judice*, the circuit court determined that the Agreement was, in and of itself, a sufficient reason for deviation from the child support guidelines. The court apparently did not consider the impact of the Agreement upon the financial resources of the parents or the financial needs of the children. The court thereby elevated the parties' contractual expectations over the best interests of the children and impermissibly allowed the parties "to agree to preclude a child's right to support by the other parent, or the right to have that support modified in appropriate circumstances." *Lieberman*, 81 Md.App. at 588, 568 A.2d 1157. The court also failed to make the necessary findings accompanying its departure from the guidelines. While the court indicated that items of value were conveyed under the Agreement instead of a portion of the support presumed under the guidelines, it did not state the estimated value of the items conveyed. Nor did the court state how deviation from the guidelines served the best interests of the children.[4] Accordingly, we must reverse and remand for further proceedings.

Appellee argues that we need not do so because the Agreement is an "unusual" one and provides the parties' children with "more than adequate care." We disagree. We have held previously that failure to make findings in accordance with subsection (2)(iv) of § 12–202(a) is reversible error. *Tannehill*, 88 Md.App. at 15, 591 A.2d 888. The conclusion that the Agreement is "unusual" is insupportable without some context, *i.e.*, some explanation of what might be the terms of the "usual" agreement. Further-

---

**4.** Presumably, the court would have been unable to do so even if it had wanted to, since its deviation from the guidelines was premised on the contractual expectations of the parties rather than the best interests of the children.

more, the assertion that the parties' children are provided with "more than adequate care," assuming it is true, is beside the point. As we have already stated, the guidelines require a trial court to presume, unless rebutted, that the amount of child support dictated by the guidelines is correct. The burden is on the party seeking an amount of child support different from that indicated by the guidelines to rebut the presumption by evidence that use of the guidelines would be unjust or inappropriate. § 12–202(a)(2)(ii).[5]

█ Appellee contends that the fact that the Agreement was entered into prior to the adoption of the guidelines bears significance. Specifically, appellee argues that application of the guidelines in the instant case would impair the obligation of the Agreement in violation of the Contract Clause of the United States Constitution. U.S. Const. art. I, § 10. In considering Contract Clause arguments, we engage in the following analysis:

> The threshold inquiry is 'whether the state law has, in fact operated as a substantial impairment of a contractual relationship.' ... If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind

---

5. The parties argue strenuously in their briefs as to whether departure from the guidelines is warranted in the instant case. We need not consider the question, since that will be the task of the circuit court on remand. We note, however, that some of appellee's arguments regarding the Agreement appear to be conclusionary and do not bear close examination. For example, appellee makes much of the fact that under the Agreement he is obligated to pay the children's educational expenses. Examination of the record suggests, however, that appellee may incur no significant educational expenses. The children attend public school. Until 1988, appellee had nothing set aside for the children's college education. In 1988, after a prior petition to modify child support had been filed, appellee set up a revocable trust and began placing $500 per month into the trust. After the current Petition was filed, appellee increased the monthly payments to $700. In addition, because appellee is an employee of the World Bank, the World Bank will pay for a substantial portion of the children's college expenses, provided they attend college abroad.

the regulation, ... such as the remedying of a broad and general social or economic problem.

* * * * * *

Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.' (Citations omitted.)

*State v. Burning Tree Club, Inc.,* 315 Md. 254, 271, 554 A.2d 366 (1989), *quoting Energy Reserves Group v. Kansas Power & Light,* 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1985).

Assuming, *arguendo,* that application of the guidelines would operate as a substantial impairment of the contractual relationship between the parties, appellee's Contract Clause argument must fail. The guidelines unquestionably have a significant and legitimate public purpose. *See supra,* p. 328. Appellee argues that the purpose of the guidelines is not served in the instant case because the children are not suffering any material deprivation under the Agreement. The fact that a particular amount of child support was negotiated by the parties, however, does not necessarily mean that it is appropriate or equitable. Moreover, as we have already made clear, even before the guidelines parties could not by contract bind a court to a particular amount of child support. *Polk v. Harris,* 46 Md.App. 591, 598–99, 420 A.2d 1004 (1980), *quoting Stancil v. Stancil,* 286 Md. 530, 535, 408 A.2d 1030 (1979) ("the chancellor cannot be handcuffed in the exercise of his duty to act in the best interest of a child by any understanding between the parties").

Turning to the next step in our analysis, we conclude that the means employed by the guidelines are reasonable and appropriate to their purpose. Appellee contends that application of the guidelines to agreements such as the one involved in the case *sub judice* may lead to unjust or

inappropriate results. The guidelines adequately provide for such a possibility, however, by vesting trial courts with discretion to depart from the guidelines if their application would be unjust or inappropriate in a particular case. § 12–202(a)(2)(ii).

■ Relying upon the general rule that existing laws are to be read into the terms of contracts, *see, e.g., Burning Tree Club,* 315 Md. at 269, n. 5, 554 A.2d 366; *Prince George's Club v. Carr,* 235 Md. 591, 607, 202 A.2d 354 (1964), appellee also argues that a material change in circumstances does not exist in the case *sub judice,* despite the fact that the guidelines create a rebuttable presumption that such a change exists, *see infra,* § 2, because the law existing at the time that the Agreement was entered into contemplated a change of circumstances directly involving the parties or their children, rather than an "artificial" change created by the General Assembly. While the parties and their children may not have been directly involved in the adoption of the guidelines, they certainly are directly affected by it. Thus, it appears that even under the law existing at the time the parties entered into the Agreement, the establishment by the General Assembly of mandatory child support guidelines—the application of which would result in a change in child support of more than 25%—would have constituted a material change in circumstances. *See Cole v. Cole,* 44 Md.App. 435, 439, 409 A.2d 734 (1979) ("It is, of course, well settled in this State that a court of equity may upon a proper petition to do so modify a decree for ... child support at any time if there has been shown a material change in circumstances that justify the action.").

■ Finally, appellee argues that the guidelines apply exclusively to child support "awards," that is, child support obligations determined by adjudication, rather than child support obligations that are the product of agreements for child support between the parties. We find this argument completely unpersuasive. As we have already indicated, "[a] parent cannot agree to preclude a child's right to

support by the other parent, or the right to have that support modified in appropriate circumstances." *Lieberman*, 81 Md.App. at 588, 568 A.2d 1157. Yet under appellee's position, the parties would be enabled to cede their children's presumptive right to the amount of support calculated under the guidelines simply because they entered into an agreement designed to satisfy their legal obligation to the children. We cannot accept such an anomalous result. In any event, it is clear that the incorporation of the Agreement into the circuit court's divorce decree of 3 August 1983 renders the Agreement no less an "award" for purposes of the application of the guidelines than an amount of support determined via contested hearings. § 12–202(b). Appellee offers no authority, nor are we aware of any, for the proposition that we should distinguish between litigated and agreement-based amounts of child support. *Cf. McCready v. McCready*, 323 Md. 476, 483, 593 A.2d 1128 (1991) (treating custody orders entered by the consent and upon the agreement of the parties analogously to litigated custody orders).

### 2.

The circuit court's concluding comments suggest that, having determined that application of the guidelines would be unjust and inappropriate in the case *sub judice*, the court considered it necessary for appellant to make a showing of a material change in circumstances separate and apart from the adoption of the guidelines in order to justify a modification of child support.

> I think the position that [appellant] has to be in is if there is a sufficient change in circumstances from that contemplated in the agreement, that appropriate petition has to be filed and a factual record made.

Appellant contends that, even if the circuit court had properly concluded that application of the guidelines would be unjust and inappropriate, she was entitled under § 12–202(b) to consideration of her Petition. We shall address

appellant's contention in order to guide the circuit court upon remand. Rule 8–131(a).

■ The guidelines create a rebuttable presumption that a material change in circumstances exists where use of the guidelines would result in a change in a child support award of 25% or more. Section 12–202(b) provides that:

(b) **Modification of orders.**—(1) Subject to the provisions of paragraph (2) of this subsection, the adoption of the guidelines set forth in this subtitle may be grounds for requesting a modification of a child support award based on a material change in circumstances.

(2) The adoption of the guidelines set forth in this subtitle may not be grounds for requesting a modification of a child support award based on a material change in circumstances unless the use of the guidelines would result in a change in the award of 25% or more.

While the use of the word "may" in the above provision suggests that the adoption of the guidelines need not be considered a material change in circumstances, such an interpretation would vitiate the guidelines and, therefore, conflict with the settled rule that a reviewing court will not presume that the General Assembly, in enacting a statute, intended to create an ineffective or invalid law. *First Nat'l Bank of Maryland v. Shpritz*, 63 Md.App. 623, 493 A.2d 410 (1985), *citing Swarthmore Co. v. Kaestner*, 258 Md. 517, 526, 266 A.2d 341 (1970). If trial courts were not required to apply the guidelines in reviewing child support obligations established before the adoption of the guidelines, the legislature's mandate of the use of the guidelines would be rendered nugatory with respect to an entire class of child support agreements or awards. Nor can we ascribe to the General Assembly the intent to create two classes of children, one presumptively entitled to the amount of child support calculated under the guidelines and one deprived of that right, based solely on the time of the establishment of the original child support obligation. It is well-established that a child's right to support may not be fixed or limited based on the parents' station in life at the time of the

divorce. *Cole,* 44 Md.App. at 446, 409 A.2d 734. Thus, as a matter of law, where application of the guidelines would result in a change in the child support obligation of 25% or more, there is a rebuttable presumption that the adoption of the guidelines constitutes a material change in circumstances.

Trial courts, of course, have discretion to deviate from the guidelines if application thereof would be unjust or inappropriate, so long as they make specific written or oral findings supporting such deviation. But the presumption that a material change in circumstances exists is not automatically rebutted by a determination that strict application of the guidelines would be unjust or inappropriate.

Ordinarily the amount of a child support award is governed by the circumstances of the case and is entrusted to the sound discretion of the trial judge, whose determination should not be disturbed unless he has acted arbitrarily in administering his discretion or was clearly wrong.

*Gates v. Gates,* 83 Md.App. 661, 663, 577 A.2d 382 (1990). Once the presumption that a material change in circumstances exists is established under § 12–202(b), a party is entitled to have his or her modification request reviewed by the trial court. If the trial court determines that application of the guidelines would be unjust or inappropriate in a particular case, it is still vested with the discretion to otherwise modify the child support obligation. Accordingly, if the circuit court concludes upon remand that application of the guidelines would be unjust or inappropriate in the case *sub judice,* appellant will still be entitled to consideration of her modification request.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.